IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICK INDUSTRIES, INC.,

    Plaintiff,

v.                                                                                          No. 1:25-cv-00813-KG-LF

CONTINENTAL CASUALTY
CO. et al.,

    Defendants.

## MEMORANDUM OPINION & ORDER
## REGARDING DEFENDANT'S MOTION TO TRANSFER VENUE

THIS MATTER is before the Court on defendants Continental Casualty Company, the Continental Insurance Company, and Columbia Casualty Company (collectively, "CNA Insurers")'s Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Doc. 9). Having reviewed the motion, the law, and being otherwise fully advised, the Court denies the motion.

### BACKGROUND

This case "is an insurance coverage, breach of contract, and bad faith dispute" that was initially filed in New Mexico state court but later removed to this Court on the basis of diversity jurisdiction. Doc. 1 at 1–3. Plaintiff, Patrick Industries, Inc., ("Patrick") is a corporation organized under the laws of Indiana with its principal place of business in Indiana. Doc. 1-3 ¶ 1; Doc. 9 at 7. Continental Casualty Company ("CCC") and Columbia Casualty Company ("Columbia") are both corporations organized under the laws of Illinois with their principal places of business in Illinois. Doc. 1-3 ¶¶ 2, 4; Doc. 9 at 7. The Continental Insurance Company ("CIC") is a corporation organized under the laws of Pennsylvania with its principal place of business in Illinois. Doc. 1-3 ¶ 3; Doc. 9 at 7–8.

Patrick obtained a tower of insurance coverage involving policies from CNA Insurers for the period of October 15, 2023, to October 15, 2024. Doc. 9 at 2; Doc. 20 at 3–4. The insurance contracts were brokered in Indiana, signed by the Indiana Branch of CNA, and issued to Patrick, which is headquartered in Indiana. Doc. 9 at 14.

In November of 2023, a semi tractor accident in New Mexico resulted in the deaths of Chad and Brad Gunter, and the Gunters' surviving family members brought a wrongful death lawsuit (the "Gunter Action") against Patrick, among other defendants, in New Mexico state court in 2024. Doc. 9 at 5–6; Doc. 20 at 3. Patrick submitted a claim for coverage to CNA Insurers related to the lawsuit. Doc. 1-3 ¶¶ 21–22; Doc. 8 ¶ 22. However, plaintiffs in the Gunter Action demanded damages in excess of Patrick's limits of liability. Doc. 1-3 ¶ 24; Doc. 8 ¶ 24. The case settled on July 11, 2025, and CNA Insurers paid the policy limits of all three insurance policies to effectuate the settlement. Doc. 9 at 6; Doc. 20 at 4–5. The parties dispute whether CNA Insurers properly reserved the right to seek recoupment of the amounts CNA Insurers paid under the policies. *See* Doc. 9 at 6; Doc. 20 at 4. Patrick argues that CNA Insurers' coverage position and reservation of rights were bad faith conduct, but that Patrick decided under duress to proceed with settling the Gunter Action. Doc. 20 at 4–5.

On July 14, 2025, Patrick filed this action in New Mexico state court, seeking a declaratory judgment that CNA Insurers owe it full coverage for the Gunter Action, Doc. 1-3 ¶¶ 79–90, and bringing claims of breach of contract, *id.* ¶¶ 91–114, tortious breach of the covenant of good faith and fair dealing, *id* ¶¶ 115–20, bad faith, *id.* ¶¶ 121–30, violations of the New Mexico Unfair Insurance Practices Act, *id.* ¶¶ 131–42, and violations of the New Mexico Unfair Trade Practices Act, *id.* ¶¶ 143–45. On July 21, 2025, CIC and Columbia filed their own lawsuit against Patrick in the U.S. District Court for the Northern District of Indiana, seeking

both a declaratory judgment that they owe no duty to indemnify Patrick in the wrongful death action and reimbursement of the funds CNA committed to pay pursuant to that action's settlement.  Doc. 9-1 at 2.

On August 28, 2025, CNA Insurers moved the Court to transfer this action to the Northern District of Indiana.  Doc. 9.  Patrick opposes the motion.  Doc. 20.  On December 16, 2024, the United States District Court for the Northern District of Indiana stayed the Indiana lawsuit pending this Court's resolution of the motion to transfer.  Doc. 29 at 1.

## ANALYSIS

### I.     Failure to Confer Pursuant to Local Rule 7.1(a).

This District's local rules of civil procedure require movants to "determine whether a motion is opposed" and provide that "a motion that omits recitation of a good-faith request for concurrence may be summarily denied."  D.N.M.LR-Civ. 7.1(a).  While parties should strictly adhere to the Court's local rules, the nature of Local Rule 7.1(a) is permissive, granting the Court discretion to reach a motion's merits despite a party's failure to adhere to the rule.  *See Merheb v. Jerman*, No. 15-cv-00522-MV-KK, 2016 WL 10671393, at *1 (D.N.M. Jan. 27, 2016); *Speridian Technologies, LLC v. Applications Software Tech. Corp.*, 15-cv-0528-KBM-WPL, 2015 WL 13047933, at *1 n.1 (D.N.M. Oct. 9, 2015).

Patrick correctly notes that CNA Insurers omitted a recitation of a good-faith request for concurrence and asserts that CNA Insurers did not confer with it to determine whether the motion is opposed.  Doc. 20 at 7–8.  CNA Insurers admit that they failed to comply with Rule 7.1(a) and state that they will ensure compliance with the rule moving forward.  Doc. 25 at 8.  CNA Insurers argue, however, that any attempt to comply with the rule would have been futile, given that Patrick has filed a motion to dismiss in the Indiana case on the basis that venue is

proper in the District of New Mexico. *Id.* at 9. But there is no futility exception in the rule's text, nor do any of the cases that CNA Insurers cite support the argument that a party may disregard the rule on their belief that concurrence would be futile. If concurrence is truly futile, a movant is required to include a recitation confirming that futility. *See* D.N.M.LR-Civ. 7.1(a).

Nonetheless, the Court will resolve the motion on the merits. The parties have already fully briefed the motion, and summarily "denying the now fully-briefed motion serves no benefit for judicial economy." *Speridian Technologies*, 2015 WL 13047933, at *1 n.1. Further, CNA Insurers at least acknowledge their failure to comply with the rule and state that such failure was inadvertent. *Cf. Armijo v. Cardinal Logistics Mgmt. Corp.*, No. 23-cv-00573-SMD-LF, 2025 WL 3269888, at *1–2 (D.N.M. Nov. 24, 2025) (summarily denying a fully-briefed motion for failure to confer under D.N.M.LR 7.1(a) where movant only attempted to confer twenty-one minutes before filing a motion and subsequently failed to address its noncompliance with the local rules). Under these circumstances it is more appropriate for the Court to admonish defense counsel to request concurrence from opposing counsel before filing any future motions in this District regardless of whether they believe a request for concurrence on such motions is futile.

II.     **Whether transfer is appropriate under § 1404(a).**

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought," both "[f]or the convenience of parties and witnesses" and "in the interest of justice." The parties do not dispute that this action could have been brought in the Northern District of Indiana. Doc. 9 at 10; Doc. 20 at 8. Whether to grant a motion to transfer venue is within the Court's discretion and is evaluated on a case-by-case basis. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.3d 1509, 1516 (10th

4

Cir. 1991).  Courts weigh the following discretionary factors to determine whether transfer is appropriate:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (citation modified).  The movant bears the burden of establishing that the existing forum is inconvenient.  *Id.*

    A.  Conflict of Laws

In diversity cases, federal courts apply the forum state's choice-of-law rules to determine the governing substantive law.  *See Young v. Hartford Cas. Ins. Co.*, 503 F. Supp. 3d 1125, 1174 (D.N.M. 2020).  Because New Mexico is the forum state, the Court must apply New Mexico choice-of-law rules, which first require courts to characterize the area of substantive law to each claim before then applying New Mexico's choice-of-law rules.  *Id.*  Here, Patrick brings three categories of claims: those that sound in contract, those that sound in tort, and those that arise from New Mexico statutes.

        *i.  Patrick's insurance coverage claims are likely governed by Indiana state law.*

New Mexico courts interpret insurance contracts according to the law of the place where the contract was executed unless the law of another state presents a matter of fundamental interest separate from contract interpretation principles and conflicts with New Mexico public policy.  *See, e.g.*, *Biotronik, Inc. v. Lamorak Ins. Co.*, No. 15-cv-00252 WJ-WPL, 2015 WL 3522362, at *12 (D.N.M. June 3, 2015); *Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 2014-

NMCA-077, ¶ 13, 329 P.3d 749, 752.  The contracts at issue in this matter were brokered in Indiana, signed by the Indiana Branch of CNA, and issued to an Indiana insured.  Doc. 9 at 14.  Patrick does not dispute that the contracts at issue were executed in Indiana, and CNA Insurers correctly note that Patrick's conflict of laws argument focuses solely on its tort claims rather than its contract claims.  *See* Doc. 25 at 6–7; Doc. 20 at 17–21.  Nor does Patrick argue that Indiana law presents a matter of fundamental interest or conflicts with New Mexico public policy as to its coverage claims.  *See* Doc. 20 at 19–21 (arguing that applying Indiana law to Patrick's *tort* claims would violate New Mexico public policy).  Therefore, Indiana law likely governs Patrick's coverage claims.

        ii.  *The briefing and record do not sufficiently demonstrate under New Mexico's choice-of-law rules which state's law likely governs Patrick's tort claims.*

Patrick also brings tort claims for breach of the covenant of good faith and fair dealing.  Doc. 1-3 at 19.  However, CNA Insurers argue that these claims sound in contract rather than tort.  Doc. 25 at 7.  CNA Insurers are generally correct, except that a claim for breach of the covenant of good faith and fair dealing can sound in tort under New Mexico law in instances where a "special relationship" is alleged between the parties.  *Los Alamos Nat'l Bank, N.A. v. Fidelity Bank*, No. 18-cv-00613-KG-JHR, 2019 WL 1532809, at *5 (D.N.M. Apr. 9, 2019) (finding that a claim for breach of the covenant of good faith and fair dealing sounds in contract where no special relationship was alleged); *City of Raton v. Arkansas River Power Auth.*, 611 F. Supp. 2d 1190, 1199 (D.N.M. 2008) (noting that a special relationship can exist between insurer and insured).  Patrick has alleged a special relationship, Doc. 1-3 ¶ 116, and that allegation thus moves the legal classification of the claim from contract to tort, *see Los Alamos Nat'l Bank*, 2019 WL 1532809, at *5.

In tort actions, New Mexico courts apply the law of the state where the wrong took place, and the place of the wrong is the location of the last act necessary to complete the injury.[1] *Young*, 503 F. Supp. 3d. at 1174. The location of the last act necessary to complete the injury "includes both the place where the acts occurred and where the legal consequences occur." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 663 F. Supp. 2d 1138, 1151 (D.N.M. 2009). In bad faith insurance tort matters, "this can mean either the place where the bad faith took place, such as the location of the insurance agent's office, or the place where the insured suffered economic loss." *Am. Prop.-Mgmt. Corp. v. Liberty Mut. Grp., Inc.*, No. 17-cv-764-KK-JHR, 2017 WL 6558577, at *7 (D.N.M. Dec. 22, 2017).

Applying these principals to the record at this stage of the proceedings, the Court cannot conclude that New Mexico law or Indiana law likely governs Patrick's tort claims. The injuries allegedly caused by CNA Insurers involve CNA Insurers retaining one set of defense counsel that inadequately defended Patrick in the Gunter Action, CNA Insurers' failure to properly investigate the Gunter Action claims, and CNA Insurers' setting of a litigation and settlement strategy that prejudiced Patrick. *See* Doc. 20 at 18–19. Patrick argues that all of these wrongs occurred in New Mexico. *Id.* at 18. CNA Insurers state that the investigation of the Gunter Action claims occurred in New Jersey, but do not state where the other alleged wrongs could have occurred— only that "CNA Insurers and their agents were not in New Mexico for any of the alleged 'wrongs' cited by Patrick." Doc. 25 at 7. Most important to this analysis, the parties do not specify what the last act was that completed the alleged injuries nor the location of that act. *See CEI Enters., Inc. v. Prof. Coating Tech, Inc.*, No. 21-cv-01212-MLG-LF, 2023 WL 8112695, at

---

[1] CNA Insurers argue that a finding that Patrick's tort claims are governed by the law of the place where the wrong occurred would be incorrect, but they do not offer an alternative rule. *See* Doc. 25 at 7.

7

*4 (D.N.M. Nov. 22, 2023) (finding that tortious acts occurring in New Mexico were immaterial to a choice-of-law analysis where the last event necessary to complete the injury occurred in Texas). Based on the record and parties' contradictory briefing, it is not clear at this stage of the proceedings whether New Mexico law or Indiana law—or even New Jersey law, given CNA Insurers' assertion that at least one of the alleged acts occurred in that state—governs Patrick's tort claims.

      iii. *The briefing and record do not sufficiently demonstrate under New Mexico choice-of-law rules which state's law governs Patrick's statutory claims.*

In addition to the above claims, Patrick also brings claims under two New Mexico consumer protection statutes: the New Mexico Unfair Insurance Practices Act and the New Mexico Unfair Trade Practices Act. Doc. 1-3 ¶¶ 131–45. In a choice-of-law analysis, consumer protection statutes are treated as tort analogs. *Am. Prop.-Mgmt. Corp.*, 2017 WL 6558577, at *7. Accordingly, the choice-of-law analysis here will be identical to that applied to the tort claims. And the same problem appears here: neither the record nor briefing sufficiently demonstrate where the last act occurred that completed the alleged injuries giving rise to these claims, rendering it impossible at this stage to decide which state's law should govern.

In sum, on the record before me, the Court cannot conclude that New Mexico law likely governs any of Patrick's claims. However, it is likely that Indiana law applies to at least Patrick's coverage claims. The Court therefore finds that this factor weighs slightly in favor of transfer.

  B. <u>Advantage of Having a Local Court Determine Questions of Local Law</u>

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Bartile Roofs*, 618 F.3d at 1170. For example, the Tenth Circuit has held that, even though a matter involved insurance policies negotiated, underwritten, and

8

executed outside of the forum state, this factor weighed against transfer where the potentially insured actions occurred in the forum state. *Id.*

Here, while it is likely that Indiana law applies to Patrick's coverage claims, the potentially insured actions that gave rise to those claims occurred in New Mexico. Doc. 9 at 5–6; Doc. 20 at 3–5. Following the Tenth Circuit's example in *Bartile Roofs*, this factor would weigh against transfer as to the coverage claims. *See* 618 F.3d at 1170. And for the reasons stated previously, because it is not clear what substantive law likely applies to the tort and statutory claims, it is not clear what local court has an interest in handling those claims. The Court therefore finds that this factor weighs slightly against transfer.

C. The Plaintiff's Choice of Forum

The plaintiff's choice of forum should rarely be disturbed, except where the balance is strongly in favor of the party moving for transfer. *Id.* at 1167. However, the plaintiff's choice of forum receives less deference "if the plaintiff does not reside in the district," or "the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id.* at 1168 (internal quotations omitted). "[F]or venue purposes, in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff." *Quorum Health Res.*, 2012 WL 769744, at *3 (quoting *Goff v. Hackett Stone Co.*, 185 F.3d 874, 1999 WL 397409, at *1 (10th Cir. 1999) (unpublished table decision)).

Patrick is a corporation organized under Indiana law with its principal place of business in Indiana, Doc. 1-3 ¶ 1; Doc. 9 at 7, and thus is not a resident of New Mexico, *see* 28 U.S.C. § 1332(c)(1). Patrick's choice of New Mexico as a forum therefore receives less deference than it otherwise would. *See Bartile Roofs*, 618 F.3d at 1168. Patrick argues, however, that its choice of forum should be given weight because the insurance coverage at issue in this action stems

9

from an underlying New Mexico state court wrongful death action involving New Mexico citizens. Doc. 20 at 9–10. CNA Insurers reply that, although the underlying wrongful death action is connected to New Mexico, the present action concerns insurance policies "issued in Indiana, from the Indiana office of the CNA Insurers, to an Indiana insured, to cover risks nationwide." Doc. 25 at 3.

In a declaratory judgment action involving insurance coverage, courts have found that the "locus of operative facts" for venue purposes "is either the site of the policy's execution or the site of the decision to deny coverage." *Quorum Health Res.*, 2012 WL 769744, at *3 (quoting *Bartile Roofs*, 618 F.3d at 1168); *see also Biotronik*, 2015 WL 3522362, at *8. The Tenth Circuit has referenced other courts' conclusion that the location of the alleged damage or loss is significant for venue purposes, but deferred adopting that approach where the record revealed that there was not "a single, alternative venue." *Quorum Health Res.*, 2012 WL 769744, at *3 (quoting *Bartile Roofs*, 618 F.3d at 1168). Accordingly, courts that find that there is a single, alternative venue in an insurance coverage action focus solely on the site of the policy's execution or the site that coverage was denied. *See id.* (concluding that Tennessee was the single, alternative venue where "the subject insurance policies were negotiated, purchased and issued in Tennessee to a Tennessee company, and are subject to interpretation under Tennessee law"); *Biotronik*, 2015 WL 3522362, at *2, *8 (finding that the facts giving rise to the lawsuit centered around the coverage issue, and that those facts occurred in Oregon because the insurance policies were solicited, negotiated, and delivered in Oregon). Here, the subject policies were issued in Indiana, from CNA Insurers' Indiana Office, to an Indiana plaintiff. Doc. 25 at 3. Therefore, the Northern District of Indiana is the single, alternative venue for the *coverage* claims.

10

However, Patrick also brings tort claims and claims arising under New Mexico statutes. *See* Doc. 1-3. As explained during the discussion of the conflict of laws factor, the parties dispute the state in which CNA Insurers committed the alleged wrongs. *See Quorum Health Res.*, 2012 WL 769744, at *3 (noting that it is the actions of the defendant, not the plaintiff, that are relevant for venue purposes). Patrick asserts that all of the alleged wrongs occurred in New Mexico, while CNA Insurers assert that none of the alleged wrongs occurred there. Doc. 20 at 18–19; Doc. 25 at 7. Just as this dispute frustrated the conflict of laws discussion, it also prevents a finding that Patrick's tort and statutory claims do not have a material relation or significant connection to New Mexico. But as was true in *Bartile Roofs*, "the facts giving rise to the lawsuit have [a] material relation or significant connection to" New Mexico because the events leading to Patrick's claim for insurance coverage all occurred in New Mexico. 618 F.3d at 1168 (alteration in original) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

In sum, Patrick's choice of forum is entitled to less deference because Patrick does not "reside" in New Mexico, but the facts giving rise to Patrick's tort and statutory claims appear to have a significant connection to New Mexico. The Court therefore finds that this factor weighs against transfer.

D. Accessibility of Witnesses and Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Bartile Roofs*, 618 F.3d at 1169. A movant demonstrating inconvenience must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."

*Id.* (citation modified) (quoting *Scheidt v. Klein*, 966 F.2d 963, 966 (10th Cir. 1992)). Inconvenience is not demonstrated where the movant "merely has made a general allegation that necessary witnesses are located in the transferee forum." *Id.* (quoting 15 Charles Wright, Arthur Miller & Edward Cooper, Fed. Prac. & Proc. § 3851, at 227–28 (3d ed. 2007)).

Here, CNA Insurers identify the parties to the contract—Patrick and CNA Insurers—and their respective agents as the witnesses with first-hand knowledge of the facts and circumstances giving rise to Patrick's contract claims. Doc. 9 at 7–8, 11. CNA Insurers contend that none of these parties are located in New Mexico and are all located in Indiana. *Id.* CNA Insurers further argue that, because the potential material witnesses are all located in Indiana, they would be outside of this Court's subpoena power to secure their attendance at trial. *Id.* However, CNA Insurers do not demonstrate that these witnesses would be unwilling to attend a trial in New Mexico (particularly given that they mostly are employees of the parties), or that deposition testimony at trial would be unsatisfactory, or that the use of compulsory process would be necessary. *See Bartile Roofs*, 618 F.3d at 1169 (stating that "the movant *must* … show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary) (citation modified) (emphasis added)). Without more, CNA Insurers' argument on this factor largely amounts to "a general allegation that necessary witnesses are located in the transferee forum," which the Tenth Circuit has found insufficient to demonstrate inconvenience. *Id.* (concluding that the convenience-to-witnesses factor weighed against transfer where the movant failed to demonstrate all three of the bases for inconvenience).

Even if the Court were to accept CNA Insurers' representation that most of the material witnesses on Patrick's contract claims—on both sides—are located in Indiana and would be

inconvenienced by litigating the case in New Mexico, at least some of the material witnesses on Patrick's tort claims and statutory claims are either in New Mexico or not in Indiana. *See* Doc. 20 at 10–13; Doc. 25 at 4–6 (acknowledging that some potential witnesses are in New Mexico or at least not in Indiana). Further, although CNA Insurers contend that Patrick's tort claims are really part of its coverage claims and that its statutory claims "must be dismissed," Doc. 25 at 4, n.1, those claims still are pending and are part of this Court's consideration in determining the relative convenience of New Mexico as a forum. As noted by Judge Damon Leichty, this case is the more comprehensive action as currently pled, and CNA Insurers have as much opportunity to pursue their declaratory judgment claims here as they do in Indiana. Doc. 29-1 at 7–8.

Because CNA Insurers bear the burden of demonstrating inconvenience, and because they have not adequately shown that the necessary witnesses would be inconvenienced by litigating this matter in the District of New Mexico, the Court finds that this factor weighs against transfer.

E. <u>Cost of Making Necessary Proof</u>

A court weighing the cost of making necessary proof must evaluate evidence concerning the potential cost of litigation in the transferor and transferee forum. *Bartile Roofs*, 618 F.3d at 1169 (citing *Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995)). Where the parties generally allege that litigation will be more expensive in a forum, but the record contains no evidence concerning those potential costs, this factor weighs against transfer. *See id.*; *Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kansas*, No. 12-cv-01110-MV-KK, 2014 WL 12635757, at *10 (D.N.M. Sept. 26, 2014).

CNA Insurers argue that, because all material witnesses and evidence are located in Indiana, the cost of their travel to New Mexico would be significant. Doc. 9 at 13. Patrick argues the opposite: that the material witnesses are located in New Mexico and that requiring

13

them to travel to Indiana would be difficult and expensive.  Doc. 20 at 13.  However, neither party provides evidence concerning the potential costs of litigating the case in either forum.  *See Bartile Roofs*, 618 F.3d at 1169 (finding that the cost of making necessary proof weighed against transfer where "the record contain[ed] no evidence concerning the potential costs of litigating the case in [the transferor state]"); *see also Pehr*, 874 F. Supp. at 321 (concluding there was not sufficient evidence to find "that the potential costs and inconvenience to [the defendant] of litigating this matter in [the transferor state] so outweigh the corresponding costs and inconvenience to plaintiff of litigating the matter in Indiana").  Moreover, discovery likely will occur wherever the witness or documentary evidence is located, *see* FED. R. CIV. P. 45(c), which would be true whether the case remains in New Mexico or is transferred to Indiana.

Without more evidence in the record, and with both parties alleging cost and inconvenience of litigation in the other court, "[i]t would appear a transfer of this case to Indiana would result only in a shift of inconveniences to plaintiff."  *Pehr*, 874 F. Supp. at 321.  The Court therefore finds that this factor weighs against transfer.

  F. <u>Difficulties that May Arise from Congested Dockets</u>

The relative congestion of the transferor and transferee courts may be considered, and "the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."  *Bartile Roofs*, 618 F.3d at 1169.  The Administrative Office of the United States Courts provides statistics for these measures as of September 2025.  *See generally* Admin. Off. of the U.S. Cts., U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (September 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0930_2025.pdf.

14

The median time from filing to disposition in civil cases is 8.5 months in the Northern District of Indiana, compared to 8.2 months in the District of New Mexico. *Id.* at 50, 81. The median time from filing to trial is not provided for either the Northern District of Indiana or the District of New Mexico. *Id.* There are 547 pending cases per judge in the Northern District of Indiana, compared to 435 pending cases per judge in the District of New Mexico. *Id.* There are 498 weighted filings per judge in the Northern District of Indiana, compared to 444 weighted filings per judge in the District of New Mexico. *Id.*

The congestion levels between the districts are comparable; the Northern District of Indiana is more congested by these metrics, but not by a significant margin. The Court finds that this factor is neutral, weighing neither for nor against transfer.

G. Remaining Factors

The remaining factors need not be discussed, as they have not been raised by the parties. *See Bartile Roofs.*, 618 F.3d at 1170. CNA Insurers have not identified any obstacles to a fair trial in New Mexico. *See id.* Nor have CNA Insurers raised any questions regarding the enforceability of a judgment against it. *See id.* CNA Insurers have not claimed that any other practical considerations would make litigation in Indiana more easy, expeditious, or economical than litigation in New Mexico. *See id.*

**CONCLUSION**

Weighing all of the discretionary factors together, CNA Insurers have not met their burden to justify transfer of this matter outside of the District of New Mexico. Only one factor is favorable to transfer compared to four against. Further, the accessibility of witnesses—the most important factor—weighs against transfer. The Court therefore denies Defendants' Motion to Transfer pursuant to 28 U.S.C. § 1404(a) (Doc. 9).

15

IT IS SO ORDERED.

_Laura Fashing_
Laura Fashing
U.S. Magistrate Judge