IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICK INDUSTRIES, INC.,

    Plaintiff,

v.                                                                    No. 1:25-cv-00813-KG-LF

CONTINENTAL CASUALTY COMPANY, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Continental Casualty Company, the Continental Insurance Company, and Columbia Casualty Company's (collectively, "CNA Insurers'") motion to dismiss Counts Five and Six of Plaintiff Patrick Industries' amended complaint.  For the reasons below, the motion is granted.

### I.    *Background*

The Court draws this background from the relevant allegations in Plaintiff's amended complaint, which the Court must accept as true at the motion to dismiss stage.  *E.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 2025 WL 2430383, at *1 n.1 (D.N.M.).

This case arises from an insurance coverage dispute over the settlement of a state court lawsuit.  Doc. 1-3 at 4.  On November 9, 2023, a "flatbed semi-truck collision occurred" in Moriarty, New Mexico.  *Id.*  The semi-truck driver "experienced a seizure which caused him to travel off the highway, down an embankment, and through a fence, building, and the wall on the far side of the building" resulting in two fatalities.  *Id.*  The decedents' estate filed suit in New Mexico court and eventually included Plaintiff as a defendant in that case.  *Id.*  Prior to the underlying accident, Plaintiff purchased a tower of insurance coverage including policies from

1

CNA Insurers for the period of October 15, 2023, to October 15, 2024.  Doc. 1-3 at 5.  Shortly after the underlying accident, Plaintiff "timely submitted a claim to the tower of auto, general liability, excess and umbrella liability, and excess liability insurers."  Doc. 1-3 at 5.  Plaintiff, an Indiana corporation, brokered the insurance contracts with the Indiana Brach of CNA in Indiana.  Doc. 10 at 4.  Both Continental and Columbia Casualty companies are Illinois corporations, and Continental Insurance Company is a Pennsylvania corporation.  *Id.* at 2.  In July 2025 Plaintiff settled the underlying lawsuit in New Mexico court in part with contributions from CNA Insurers under the previously purchased auto, excess and umbrella, and excess liability policies.  *Id.* at 4, 6.

Plaintiff alleges that CNA Insurers improperly "refused to [contribute to the settlement] under the general liability policy and refused to pay on the" auto, excess and umbrella, and excess liability "policies without reserving the right to contest coverage at a later time" to receive reimbursement from Plaintiff.  *Id.* at 6,7.  Plaintiff also alleges that CNA Insurers "refused to provide releases to" Plaintiff and, "[b]ecause [Plaintiff] was under duress to settle the [New Mexico lawsuit]" they were forced to accept CNA Insurers "pay[ment] on such bases."  *Id.* Plaintiff claims that CNA Insurers originally acknowledged their obligations under the general liability policy through their actions, including "assign[ing] a law firm to defend [Plaintiff]" under the policy and "travel[ing] to New Mexico to engage in a mediation session."  *Id.* at 8. Plaintiff alleges that, although CNA Insurers acknowledged their coverage obligations under the general liability policy for seven months, they reversed course in an email that said "there are really no [general liability] allegations" against Plaintiff and "it would be more appropriate to handle under the Auto policy."  *Id.* at 9.  While Plaintiff settled the underlying lawsuit on July 11, 2025, CNA Insurers "refused to [contribute to the settlement] on a non-recourse basis" and

"has breached its coverage obligations by refusing to acknowledge coverage under the [general liability] policy." *Id.* at 13.

Plaintiff filed this six-count amended complaint in New Mexico state court on July 11, 2025, and Defendants removed the case to this Court on August 21, 2025. Doc. 1. Relevant here, Counts Five and Six allege that CNA Insurers violated New Mexico's Unfair Insurance Practices Act ("IPA") and its Unfair Trade Practices Act ("UPA"). Doc. 1-3 at 21–24; *see* NMSA 1978, § 59A-16-1 (Cum. Supp. 2001); NMSA 1978 § 57-12-2 (Cum. Supp. 2025). Count Five alleges that because CNA Insurers "failed to exercise good faith, unreasonably delayed payments and settlement, and failed to give the interests of its insured the same consideration they gave their own interests," they "committed violations of the [IPA]." *Id.* at 21–22. Count Six alleges that because CNA Insurers "failed to deliver the quality or quantity of services applied for and purchased by [Plaintiff]" CNA Insurers "knowingly and willfully engaged in unfair trade practices" in violation of the UPA. *Id.* at 23–24.

CNA Insurers filed their motion to dismiss Counts Five and Six on August 28, 2025. Doc. 10. They argue that the New Mexico IPA and the UPA "facially do not apply to [Plaintiff's] because [Plaintiff] does not allege and cannot demonstrate that the conduct at issue has the required nexus with New Mexico."[1] *Id.* at 1. Plaintiff responded, Doc. 21, and argues that because "any person" may bring a UPA claim "that directly or indirectly affects the people" of New Mexico, and that the IPA permits "any person" to bring a claim for unfair practices, the

---

[1] CNA Insurers alternatively argues that Plaintiff's claims are governed by Indiana law, which does not recognize the New Mexico statutory or bad faith claims. Doc. 10 at 2. Because Judge Fashing has already ruled on the motion to change venue, Doc. 32, the Court declines to analyze questions of any Indiana statute's applicability to this case and limits its analysis to the Rule 12(b)(6) motion.

motion should be denied.  *Id.* at 1.  Alternatively, Plaintiff requests the Court grant them leave to amend.  *Id.* at 14.  CNA Insurers replied, Doc. 26.

## II.    *Legal Standard*

Federal courts have subject matter jurisdiction based on diversity for "all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different States."  28 U.S.C. § 1332(a).  When subject matter jurisdiction is based on diversity, a federal court must assess state law claims based on the substantive law of the state.  *See Macon v. United Parcel Serv.*, 743 F.3d 708, 713 (10th Cir. 2014).  Federal courts defer to the state's highest court if they have interpreted a state statute, and work to reach the same result that would be reached in state court.  *See Commonwealth Prop. Advocates v. Mortg. Elec. Registration Sys.*, 680 F.3d 1194, 1204 (10th Cir. 2011).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if accepted as true, state plausible claims for relief that are plausible on their face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint satisfies this standard if it contains sufficient factual allegations for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The complaint must give the Court reason to believe "that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Upon dismissal of all or part of a plaintiff's complaint under Rule 12(b)(6), courts generally permit plaintiffs to file an amended complaint.  *See Brever v. Rockwell Int'l*, 40 F.3d 1119, 1131 (10th Cir. 1994).

### III.    Analysis

For the reasons below, the Court grants CNA Insurers motion to dismiss (A) Plaintiff's claim under New Mexico's IPA and (B) Plaintiff's claim under New Mexico's UPA.

### A.    Plaintiff's IPA Claim

CNA Insurers' motion to dismiss Count Five is granted.  The New Mexico Legislature passed the IPA "to regulate trade practices in the insurance business and related businesses" including "*practices in this state* which constitute unfair methods of competition or unfair or deceptive acts or practices."  *Estate of Gonzales v. AAA Life Ins.*, 2012 WL 1132332, at *8 (D.N.M.) (emphasis added); NMSA 1978, § 59A-16-2 (Cum. Supp. 1984).  The IPA imposes liability for "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue," "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies," and "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims arising under policies." *Bhasker v. Kemper Cas. Ins.*, 361 F. Supp. 3d 1045, 1140 (D.N.M. 2019); *see* Doc. 1-3 at 22.

CNA Insurers argues that Plaintiff's "New Mexico IPA claims are entirely based on conduct occurring outside of New Mexico such that [Plaintiff] cannot sustain a claim under the IPA."  Doc. 10 at 7.  While CNA Insurers concedes that their representatives attended mediations in the underlying lawsuit in New Mexico, they argue that "nothing in the Amended Complaint specifically alleges that anything the CNA Insurers said or did at mediation while in New Mexico violated the New Mexico IPA."  *Id.*  The Court agrees.  Plaintiff fails to plausibly allege that any of the allegations in Count Five occurred in New Mexico.  Plaintiff's sole basis for applying the IPA is CNA Insurers' representatives attending a mediation conference in New Mexico to resolve the underlying lawsuit.  *See* Doc. 1-3 at 8.  However, Plaintiff fails to connect

any of the alleged violations of the IPA, including misrepresentation of the insurance plan, to

CNA Insurers' representatives attending a mediation conference for a separate lawsuit in New

Mexico.  The insurance plans at issue here were not executed in New Mexico, and all the alleged

correspondence regarding coverage for the underlying accident and reservation of rights

occurred outside of New Mexico between parties that are foreign to New Mexico.  Doc. 10 at 7.

Plaintiff's counterarguments are unpersuasive.  Plaintiff argues that its IPA claim

survives Rule 12(b)(6) scrutiny because a "liberal application" of the IPA affirms that CNA

Insurers "conduct as a whole was engagement in the adjustment of claims arising in New

Mexico."  Doc. 21 at 5.  They also state that if the Court were to rule that the IPA does not apply

here, it would result "in the failure to promptly and equitably resolve claims that occurred in

New Mexico and affect New Mexico residents."  Doc. 21 at 7–8.  Not so.

While Plaintiff's actions contributed in part to two New Mexico residents' harm, that

action has been resolved in a separate matter and separate settlement.  Doc. 1-3 at 6.  What

remains now is an insurance dispute between two foreign companies as to coverage under plans

that were not negotiated in New Mexico, not executed in New Mexico, and no longer resulting in

any economic harm in New Mexico.  *See* Doc. 32 at 2 ("The insurance contracts were brokered

in Indiana, signed by the Indiana Branch of CNA, and issued to [Plaintiff], which is

headquartered in Indiana.").  Plaintiff, an Indiana corporation, may not take advantage of New

Mexico's statutes to absolve an economic harm caused by the alleged bad faith actions of an

Illinois corporation simply because an underlying accident giving rise to the claim happened to

occur in New Mexico.  *See generally Winters v. Transamerica Ins. Co.*, 194 F.3d 1321 at *4

(10th Cir. 1999) ("An insurer's incorrect decision regarding coverage, without more, does not

establish bad faith."). In other words, Plaintiff has not plausibly alleged business practices in this state as contemplated in the IPA. Count Five is dismissed.

### B.    Plaintiff's UPA Claim

CNA Insurer's motion to dismiss Count Six is also granted. New Mexico's UPA "provides individual and class action remedies for unfair, deceptive or unconscionable trade practices." *Valdez v. Metro. Prop. & Cas. Ins.*, 2012 WL 1132414, at *19 (D.N.M.). "Trade" includes "the advertising, offering for sale or distribution of any services and any property and any other article, commodity or thing of value, including any trade or commerce directly or indirectly affecting the people of *this state*." NMSA 1978 § 57-12-2 (Cum. Supp. 2025) (emphasis added). "Generally speaking, the UPA is designed to provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 142 N.M. 437. To prevail under the UPA, Plaintiff must show that the alleged violator made an "oral or written statement, visual description or other representation" that was false or misleading. *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97. The representation must be shown to have been "knowingly made in connection with the sale...of goods or services," occurred in the "regular course of the representer's trade or commerce," and is of the type that "may, tends to or does, deceive or mislead any person." *Id.*

CNA Insurers argue that the "alleged bad faith conduct" "had no impact at all on the people of New Mexico" and that, even in the underlying lawsuit, the alleged "conduct had no impact on the underlying [lawsuit] or their recovery against [Plaintiff], which has been settled and paid out." Doc. 10 at 7. Because Plaintiff "is an Indiana resident" "none of the conduct alleged directly or indirectly affect any New Mexico citizens." *Id.* at 8. The Court agrees.

Plaintiff fails to plausibly allege that the sale of the insurance plans from CNA Insurers to Plaintiff is a trade that directly or indirectly affects the people of New Mexico.  In fact, the primary harm Plaintiff alleges in Count Six is that the CNA failed to deliver the services they applied for by failing "to provide insurance...containing sufficient information...to which [Plaintiff] was under the reasonable belief that such coverage existed."  Doc. 1-3 at 23–24. Plaintiff fails to make the necessary connection between the sale of the plan and its impact on the people of New Mexico, and Count Six neglects to even articulate a "threadbare recital" of the elements to recover under the UPA.  *Iqbal*, 556 U.S. at 678 (2009).

Plaintiff's counterarguments are unpersuasive.  Once again relying on a "liberal reading" of clear statutory text, Plaintiff argues that CNA Insurers' misrepresentations "were made in the course of offering and distributing its insurance" and that CNA Insurers' motion "collapse[s] under the weight of the connections this case has with New Mexico."  Doc. 21 at 5.  Plaintiff then proceeds to restate the facts of the underlying accident and underlying lawsuit as evidence of the policy affected the people of New Mexico.  *Id.*  Count Six simply fails to plausibly allege that the manner of sale of an insurance plan by an Illinois corporation to an Indiana corporation, and a future dispute about coverage that could result in economic harm to the Indiana corporation, "directly or indirectly impacts the people of [New Mexico]."  NMSA 1978 § 57-12-2 (Cum. Supp. 2025).  Plaintiff fails to recognize that this case is no longer about the underlying accident that tragically took the lives of two New Mexicans.  Doc. 21 at 5.  Rather, this case concerns the manner in which CNA Insurers sold and provided insurance to Patrick Industries.

8

## IV.    *Conclusion*

For the reasons above, CNA Insurers' motion to dismiss Counts Five and Six, Doc. 10, is

granted.  Plaintiff may amend its complaint within 21 days of this order.  *See* Fed. R. Civ. P.

15(a)(2).

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been
  electronically filed. To verify its
  authenticity, please refer to the Digital File
  Stamp on the NEF (Notice of Electronic
  Filing) accompanying this document.
  Electronically filed documents can be found
  on the Court's PACER public access
  system.